### SCHIFRIN et al. v. CIRESA et al.

Civil No. 448.

District Court, D. New Jersey.

Nov. 7, 1941.

As Amended Nov. 12, 1941.

670

Ellis I. Taube, of Jersey City, N. J. (Meyer Schifrin, of New York City, of counsel), for plaintiffs.

Charles P. Saling, of Union City, N. J. (Fritz Ziegler, of New York City, of counsel), for defendants.

SMITH, District Judge.

This is a suit for patent infringement, and the issues are those usually raised, to wit, validity and infringement. The complaint presents two separate and distinct, but related, causes of action, each predicated on a different patent. The patents and the alleged infringements thereof are separately considered.

### Patent No. 1,934,398
### Findings of Fact

The plaintiff, Moses J. Schifrin, is, and was, the owner of Patent No. 1,934,398, issued on the application of Aaron Benowitz, filed on November 7, 1931. The said plaintiff acquired all right, title and interest in and to the said patent, including the right to sue thereon for past infringement, under an assignment, by the Synthetic Fur Mills Corporation. The plaintiff, Concord Chenille Co., Inc., was, at the time suit was instituted, the exclusive licensee under the said patent.

The alleged invention is adequately defined in claims 1 and 4, both of which the plaintiff relies upon and alleges were, and are, infringed by the defendants, who admittedly are, and have been engaged in the manufacture and sale of embroidered fabrics in which curled chenille is used. The invention is defined in the said claims as follows:

"1. A means of imparting to a yarn a special form, comprising a heated tube moveable back and forth, the said tube being formed with a threaded inner surface."

"4. A means for imparting to a yarn or chenille a special form, comprising a heated tube formed with a threaded inner surface and adapted to permit a back and forth movement of the said yarn therein."

When the claims are read and interpreted in the light of the rejected claims and the prior art, it is apparent that the alleged invention is restricted to the described "means" for curling the radial fibres of tufted cords, such as chenille, etc. The alleged invention is, in fact, nothing more than a reciprocating heated tube, the inner surface of which is threaded.

A complete anticipation of the claims in suit is found in the prior art, as exemplified in the Goodman patent (No. 1,065,235) and the Societe Roesch & Cie patent (France—No. 432,113). The former is directed, not only to a machine for treating chenille, but, to a reciprocating heated tube as an integral part thereof; the latter is similarly directed, not only to a machine for treating chenille, but, to a reciprocating heated tube as an integral part thereof. The conclusion that the Benowitz patent follows the disclosures of the prior art, is inescapable. The exhibits of the defendants, which include a machine constructed under the teachings of the Goodman patent, place this conclusion beyond reasonable doubt. The said claims, therefore, are invalid.

It is evident that heated tubes similar to, if not identical with, those described in the Benowitz patent, had been in public use in the art, not only prior to the application for the said patent (November 7, 1931), but prior to the application for the Goodman patent (January 9, 1912). It clearly appears from the undisputed testimony that before the introduction of mechanical devices the radial fibres of tufted cords, such as chenille, etc., had been curled by drawing the said cords through heated tubes by manual operation. The device to which the patent in suit is directed was, therefore, not patentable.

The absence of invention is beyond question. The patentee made no contribution to the art. The introduction of the "threaded inner surface", which the plaintiff contends is an essential element of the alleged invention, required nothing more than mechanical ingenuity. It clearly appears, however, from the uncontradicted testimony, that this element was not new, and for this reason, if no other, was not patentable.

The machine used by the defendants in the production of curled chenille does not

infringe the Benowitz patent. It is apparent that machines of similar construction had been in public use for more than two years prior to the application for the said patent, and that the heated tube had been an integral part of such machines. The general teachings of the Goodman patent, and not those of the Benowitz patent, were followed in the construction of the defendants' apparatus.

### Conclusions of Law

Claims 1 and 4 of the patent in suit are invalid for the reasons hereinabove stated; the said claims if valid, are not infringed for the reasons hereinabove stated. The relief sought by the plaintiff is, therefore denied.

### Patent No. 2,115,967

### Findings of Fact

The plaintiff, Moses J. Schifrin, is, and was, the owner of Patent No. 2,115,967, issued on his application, filed on November 8, 1937. The plaintiff, Concord Chenille Co., Inc., was, at the time suit was instituted, the exclusive licensee under the said patent.

It is alleged that claim 1 of the said patent was, and is, infringed by the defendants, who, admittedly are, and have been, engaged in the manufacture and sale of imitation fur fabrics. The said claim defines the invention as follows: "An artificial fur fabric comprising a backing, a layer of curled round chenille completely covering the surface of said backing and secured to said surface by sewing, said chenille contacting throughout its length the said surface in adjacent non-intersecting irregular sinuous fur-like rows, a substantial proportion of the sewing stitches crossing the core of the chenille so as to effectively secure it against displacement on said surface, the fibres of said chenille being pulled down in many places by the sewing stitches so as to produce irregularities in the finished fabric." The said claim is directed to an artificial fur fabric, not only similar to, but identical with, that manufactured and sold by the defendants. It, therefore, necessarily follows that if the claim in suit is valid, it was, and is, infringed by the product manufactured and sold by the defendants.

An examination of the said claim in the light of the prior art, as exemplified in the Romaine patent (No. 1,731,591), the Unger patent (No. 1,889,733), and the Tremblay patent (France—No. 389,427), discloses complete anticipation. All of the said patents are directed to imitation fur fabrics, and, more particularly, to processes of manufacture. The disclosures of the said prior art patents are clear, unambiguous, and complete, so that persons skilled in the art can follow their teachings without difficulty. The claim in suit is, therefore, invalid because of anticipation.

It clearly appears from the undisputed testimony that artificial fur fabrics, similar in pattern and construction to that described in the Schifrin patent, had been in public use for more than two years prior to the application for the said patent. Such fabrics had been in commercial use in the United States since 1902, if not prior thereto. The manufacturers, among them the present defendants, had been engaged in the manufacture and sale of such fabrics since 1930. The product, to which the claim in suit is directed, was, therefore, not patentable.

It appears from the file wrapper, a certified copy of which is in evidence, that of six claims advanced by the patentee, in his petition to the Commissioner of Patents, four were rejected in their entirety, and were, thereupon, cancelled. When the patent in suit is read and interpreted in the light of the rejected claims and the prior art, it is evident that the claim in suit is limited to the stitch structure, defined in the said claim as follows: " * * *, a substantial portion of the sewing stitches crossing the core of the chenille so as to effectively secure it against displacement on said surface, the fibres of said chenille being pulled down in many places by the sewing stitches so as to produce irregularities in the finished product." This construction conforms in substance to the principal contention of the plaintiff. The absence of invention is clear; the improvement, if any, required nothing more than mechanical ingenuity common to those skilled in the art. It, therefore, necessarily follows that the claim is invalid for lack of invention.

### Conclusions of Law

The claim in suit is invalid for the reasons hereinabove stated. The relief sought by the plaintiff is, therefore, denied.